FILED

AO 106 (REV 7/87) Affidavit for Search Warrant                    AUSA Peter P. Salib, (312) 697-4092

JAN 3 1 2011

Magistrate Judge Sidney I. Schenkier
United States District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**UNDER SEAL**

In the Matter of the Search of:

The premises of the grocery store called Jordan Fish
Market, located at 5105 S. Ashland Avenue, Chicago,
Illinois, as further described in Attachment A

APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT

Case Number:      **11M037**

I, Michael Parrish, being duly sworn, depose and state that: I am a Special Agent of the United States

Department of Agriculture Office of the Inspector General and have reason to believe that on the property or

premises known as:

**See Attachment A**

in the Northern District of Illinois there is now concealed certain property, namely:

**See Attachment B**

which is evidence and instrumentalities, concerning a violation of Title 7, United States Code, Section 2024, and

Title 18 United States Code, Section 1343.

The facts to support a finding of probable cause are as follows:

**See Attached Affidavit**,

continued on the attached sheets and made a part hereof.

_____
Signature of Affiant
MICHAEL PARRISH
Special Agent, United States Department of Agriculture Office of

the Inspector General

Sworn to before me and subscribed in my presence,

January 31, 2011                              at    Chicago, Illinois
Date                                                City and State


Sidney I. Schenkier, U.S. Magistrate Judge        _____
Name & Title of Judicial Officer                   Signature of Judicial Officer

UNITED STATES DISTRICT COURT          )
                                      )  ss
NORTHERN DISTRICT OF ILLINOIS         )

## AFFIDAVIT

I, Michael Parrish, being duly sworn, state as follows:

1.      I am a Special Agent with the United States Department of Agriculture Office of the Inspector General ("USDA OIG"). I have been so employed since approximately July 2002.

2.      As part of my duties as an USDA-OIG Special Agent, I investigate criminal violations relating to food stamp, access device, and wire fraud, money laundering, and other financial crimes. As a Special Agent of the USDA OIG, I have received specialized training regarding the fraudulent use of access devices, wire fraud, and money laundering violations. I have also participated in the execution of multiple federal search warrants.

3.      This affidavit is made in support of an application for a warrant to search the premises of the grocery store called Jordan Fish Market, located at 5105 S. Ashland Avenue, Chicago, Illinois, described further in Attachment A (the "Subject Premises"), for evidence, instrumentalities, and fruits, described further in Attachment B, in violation of Title 7, United States Code, Section 2024 (food stamp fraud), and Title 18 United States Code, Section 1343 (wire fraud).

4.      This affidavit is also made in support of an application for a seizure warrant relating to the following funds, because, as more fully described below, there is probable cause to believe that the funds contained in the subject account represent property that

2

constitutes, and was derived from, proceeds traceable to food stamp fraud and wire fraud and

is therefore subject to seizure pursuant to Title 18, United States Code, Section 981(a)(1)(C):

> All funds in Account Number 764157582 in the name of Walid
> A. S. Ghnaim and/or held for the benefit of Jordan Fish Market
> at JP Morgan Chase, N.A., Chicago, Illinois (the "Subject
> Account").

5.      As set forth in detail below, there is probable cause that individuals associated

with Jordan Fish Market been involved in a scheme to defraud, in violation of Title 7, United

States Code, Section 2024, and Title 18, United States Code, Section 1343. This scheme has

generated illicit proceeds that have been transferred by wire to the Subject Account. These

funds are subject to seizure.

6.      The statements in this affidavit are based on my personal knowledge, and on

information I have received from other law enforcement personnel and from persons with

knowledge regarding relevant facts. Because this affidavit is being submitted for the limited

purpose of securing a search warrant and seizure warrant, I have not included each and every

fact known to me concerning this investigation. I have set forth only those facts that I

believe are necessary to establish probable cause to believe that evidence, instrumentalities,

and fruits of violations of Title 7, United States Code, Section 2024, and Title 18 United

States Code, Section 1343 are located at the Subject Premises. In addition, I have set forth

facts that I believe are necessary to establish probable cause to believe the funds located

within the Subject Account are subject to seizure.

3

## FACTS SUPPORTING PROBABLE CAUSE TO SEARCH THE SUBJECT PREMISES AND SEIZE FUNDS FROM THE SUBJECT ACCOUNT

### The SNAP Program formerly called the Food Stamp Program and Transfer of EBT Funds to Approved Stores

7.      The Supplemental Nutrition Assistance Program (SNAP), formerly and more commonly known as the Food Stamp Program, is a federal benefit program intended to assist low-income people and families buy food. In 1997, the USDA, through the State of Illinois Department of Public Aid (IDPA), began converting from a traditional paper food stamp coupon system to what is known as an Electronic Benefit Transfer (EBT) card, commonly referred to as a LINK card. LINK cards, like debit and credit cards, can be used by swiping the card through a point-of-sale (POS) device.

8.      For a store to become eligible to participate in the Food Stamp Program, a store owner in the Chicago area is required to complete, sign, and submit a Food Stamp Program Application for Stores (Form FNS 252) to the Chicago Field Office of the USDA. Stores that are approved by the USDA to participate in the Food Stamp Program, which is administered by the Food and Nutrition Service (FNS) of the USDA, are issued a food stamp authorization card and a food stamp authorization number, and are provided with food stamp redemption certificates bearing the name, location, and food stamp authorization number of the participating food store.

9.      To access the electronic funds on a beneficiary's LINK card, authorized vendors are also provided with a POS that debits the recipients' account for the cash value

4

of the eligible items purchased. Vendors are then periodically reimbursed for the redemptions via an electronic transfer directly into their designated bank account.

10.     At the time a store is granted authorization to participate in the Food Stamp Program, FNS informs the store that POS devices are nontransferable and may only be used at the authorized store.

11.     Whenever a retailer processes a LINK transaction, LINK receipts are generated from the authorized POS device used. The LINK receipts show the store name, address, EBT card number used, beginning balance of the food stamp benefits, the amount of purchase, and the ending balance of the food stamp benefits.

12.     Under federal law, LINK card benefits are not allowed to be redeemed for cash. As with traditional food stamp coupons, food stamp recipients can exchange LINK card benefits only for eligible food items and only at stores authorized by the USDA to accept LINK cards. Authorized stores can lawfully accept food stamps or LINK card benefits in exchange for eligible food items only and not for items such as alcoholic beverages, tobacco, hot foods ready to eat, lunch counter items, vitamins, medicines, pet foods, or cash.

## Jordan Fish Market

13.     Based on a review of USDA records, Jordan Fish Market was authorized on or about February 3, 2010 to accept USDA electronic food stamp benefits (EBT) and designated FNS authorization number 0234149. FNS records show "Walid A. S. Ghnaim"

to be the authorized owner associated with Jordan Fish Market. A POS device was issued to Jordan Fish Market for the redemption of electronic food stamp benefits.

14.     Prior to Jordan Fish Market being authorized to accept EBT funds, an FNS reviewer visited the store to determine if it was eligible to participate in the Food Stamp Program. The report of the FNS Survey conducted on or about January 29, 2010, indicated the store: (1) was a medium-sized grocery store located in a residential area, (2) it had one cash register/check-out stand, (3) it did not have any shopping carts and/or baskets available, (4) it had no optical scanners, and (5) no EBT point-of-sale terminals.

## Exchanges of EBT Benefits for Cash at Jordan Fish Market

15.     On or about December 14, 2010, a USDA Compliance Branch Confidential Informant (CI#1), working with law enforcement, entered Jordan Fish Market. CI#1 had been provided with an EBT card by USDA agents.    According to USDA Compliance Branch reports of an interview with CI#1, the clerk (Clerk #1) at Jordan Fish Market completed an EBT transaction in which $33.00 in EBT benefits was accepted in exchange for $20.00 in cash. A review of USDA records reveals that the EBT card provided to the CI#1 and used during the undercover transaction at Jordan Fish Market was electronically swiped through the POS device assigned to Jordan Fish Market.

16.     On or about December 16, 2010, USDA Compliance Branch CI#1 entered Jordan Fish Market. CI#1 had been provided with an EBT card by USDA agents. According to USDA Compliance Branch reports of an interview with CI#1, Clerk #1 at Jordan Fish Market completed an EBT transaction in which $104.25 in EBT benefits was accepted in

exchange for $60.00 in cash. A review of USDA records reveals that the EBT card provided to the CI#1 and used during the undercover transaction at Jordan Fish Market were electronically swiped through the POS device assigned to Jordan Fish Market.

17. Between December 28, 2010 and January 3, 2011, a USDA-OIG Confidential informant (CI#2) completed two undercover transactions at Jordan Fish Market, both of which resulted in an exchange of food stamp benefits for cash. Each of the transactions was conducted under the control of law enforcement and was recorded with the use of audio and/or video.

18. On or about December 28, 2010, CI #2 entered Jordan Fish Market after receiving an EBT card by USDA agents. According to my review of the recordings of this date and speaking with CI#2, CI#2 completed an EBT transaction in which EBT food stamp benefits were redeemed for cash with Clerk #1. Clerk #1 stated that the exchange rate for selling food stamps/EBT for cash is $100.00 in food stamps/EBT for $60.00 in cash in return. Clerk#1 debited the CI#2's EBT card in an amount of $117.87 and gave CI#2 $60.00 in cash in return.

19. On or about January 3, 2011, CI #2 entered Jordan Fish Market after receiving an EBT card by USDA agents. According to my review of the recordings of this date and speaking with CI#2, CI#2 completed an EBT transaction in which EBT food stamp benefits were redeemed for cash with Clerk #1. Clerk #1 debited the CI#2's EBT card in an amount of $119.13, and gave CI#2 $50.00 in cash in return.

20.     A review of USDA records reveals that the EBT cards provided to CI #2 by agents from USDA that were used on December 28, 2010 and January 3, 2011 during the undercover transactions at Jordan Fish Market were electronically swiped through the POS device assigned to Jordan Fish Market.

21.     The undercover transactions described above are summarized in the following chart:

| Date | EBT Amount | Cash Received | POS Used |
|------|------------|---------------|----------|
| December 14, 2010 | $33.00 | $20.00 | Jordan Fish Market |
| December 16, 2010 | $104.25 | $60.00 | Jordan Fish Market |
| December 28, 2010 | $117.87 | $60.00 | Jordan Fish Market |
| January 3, 2011 | $119.13 | $50.00 | Jordan Fish Market |

## Additional Information

22.     As part of the authorization process to participate in the Food Stamp Program, applicants are required to report an estimate of their annual food sales, and then also must report any significant changes in its food sales. Prior to its admission into the Food Stamp Program in February 2010, Jordan Fish Market estimated on form FNS 252 that it would sell approximately $135,000 in eligible food products per year, yielding a monthly average of approximately $11,250. A search of FNS records revealed no evidence that Jordan Fish Market reported an increase in its estimated sales of eligible food items.

23.     Records available for Jordan Fish Market show a high level of LINK redemptions during the months of May through December 2010 compared to the store's estimated annual sales. Specifically, based on data available to USDA investigators, from May through December 2010, Jordan Fish Market has redeemed considerably more dollars

in food-based EBT redemptions than the store's estimated average monthly food sales.[4] The

data described above is summarized in the following chart:

| MONTH/YEAR | LINK REDEMPTIONS | AVERAGE MONTHLY ESTIMATED FOOD SALES |
|---|---|---|
| May 2010 | $17,775.49 | $11,250.00 |
| June 2010 | $36,210.12 | $11,250.00 |
| July 2010 | $71,885.19 | $11,250.00 |
| August 2010 | $106,580.15 | $11,250.00 |
| September 2010 | $158,142.56 | $11,250.00 |
| October 2010 | $179,844.66 | $11,250.00 |
| November 2010 | $162,735.43 | $11,250.00 |
| December 2010 | $202,080.57 | $11,250.00 |
| Total | $93,5254.17 | $90,000.00 |

24.     Based on my experience and training, my analysis of USDA records of Jordan Fish Market's EBT redemptions revealed a number of patterns consistent with food stamp trafficking. Specifically, the records showed a high number of EBT transactions within short time frames and high dollar transactions which deplete a recipient's monthly food stamp benefit amounts in short time frames. In my experience, high dollar transactions in short periods of time in a store with one cash register and no optical scanners are consistent with food stamp trafficking.

**Transfer of EBT Funds to Jordan Fish Market**

25.     Through the LINK card system, food stamp benefits are automatically credited to the recipient's LINK card each month. For recipients to access their electronic benefits to purchase eligible food items, they were required to present their LINK card to a retailer authorized by USDA. Unauthorized retailers cannot accept LINK cards. The LINK cards can only be processed by a specially provided and manufactured POS terminal designed to accept LINK cards (the LINK card machine). After manually entering the information or "swiping" the LINK card through the LINK card machine, the food stamp recipient enters

9

a personal identification number (PIN) into the machine's keypad to complete the transaction. The LINK card machine records the LINK card account number, the date and time of the transaction, and the amount debited from the recipient's LINK card.

26.     Once the necessary information is received by the LINK card machine, it automatically calls a 1-800 telephone number, which allows the LINK card machine to dial into Affiliated Computer Services (ACS)[1] located in Austin, Texas. Through this contact, the LINK card transaction is either approved or rejected, and the result is then communicated to the LINK card machine, again through the open phone line. If the LINK card transaction is approved, ACS transfers or causes to be transferred funds from each redemption into the bank account of the authorized retailer to whom the LINK card machine is registered. The transfer of funds into an account identified by the authorized retailer[2] usually takes place the next business day following the approved LINK card transaction.

27.     In its application to participate in the Food Stamp Program, Jordan Fish Market indicated that all EBT redemptions from the USDA should be transferred to account number 764157582 at JP Morgan Chase Bank, which is held in the name of Walid A. S. Ghnaim. Jordan Fish Market received EBT redemptions in connection with each of the fraudulent cash-for-benefits transactions identified above, and each of those fraudulently-obtained redemptions were transferred to account number 764157582 at JP Morgan Chase Bank. Therefore, based on this information, it is my belief that all of the proceeds for the food

---

[1]The LINK card system is operating under contract with the federal government by Northrop Grumman through Affiliated Computer Services (ACS).

[2]This bank account is required by USDA regulations to be for the sole purpose of LINK benefits.

10

account number 764157582 at JP Morgan Chase Bank.

## Use of Computers to Facilitate Food Stamp Fraud

28.     Based on my training and experience, persons and businesses that are involved in the retail sales of grocery items, and those who have been authorized to participate in the redemption of USDA food stamp benefits, frequently use computers and computer-based records to maintain business records of sales and redemptions.  Such computers also frequently contain surveillance videos.

29.     It is presently unknown whether Jordan Fish Market owns or is using one or more computers in connection with its redemption of food stamp benefits.  In the event that Jordan Fish Market is using any computers for that purpose, and in the event those computers are located inside Jordan Fish Market, it will be necessary to examine those computers for evidence of the fraudulent redemption of EBT benefits in violation of Title 7, United States Code, Section 2024 and Title 18, United States Code, Section 1343.

30.     There is reason to believe that various records, identified in Attachment B, are likely on the Subject Premises because based on my training and experience investigating food stamp, access device, and wire fraud, money laundering, and other financial crimes, as well as the experience of other agents with whom I have spoken, I know that owners and employees of stores that engage in food stamp transactions like Jordan Fish Market, often keep the following kinds of records on the premises of the store:

a.      records of names and numbers of business associates, such as in telephone or address books;

11

b.   records related to the EBT transactions, including the names of customers, card numbers, PIN numbers, LINK card balances, and cash exchange rates for different LINK amounts in ledgers or lists;

c.   financial records, such as bank statements, that relate to the use of proceeds of EBT transactions and other sales at the business;

d.   records related to the ownership of the business and for the property at which the business is located;

e.   records related to employees, payroll, and/or scheduling records.

31.   The searching agents involved in this search will mirror-image the computers if possible and practicable. If it is not possible nor practicable to mirror-image the computers on-site, then the computers will be taken to the laboratory setting. In either event, the subsequent search(es) of any electronic media or computers will be done according to the following protocol:

## SPECIFICS REGARDING SEARCHES OF COMPUTER SYSTEMS

32.   Based upon my training and experience, and the training and experience of specially trained computer personnel whom I have consulted, searches of evidence from computers commonly require agents to download or copy information from the computers and their components, or remove most or all computer items (computer hardware, computer software, and computer-related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a.   Computer storage devices can store the equivalent of thousands of pages of

information. Especially when the user wants to conceal criminal evidence, he or she often stores it with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

b.     Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

33.     In order to fully retrieve data from a computer system, the analyst needs all storage media as well as the computer. The analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard disk drives or on external media).

34.     In addition, a computer, its storage devices, peripherals, and Internet connection interface may be instrumentalities of the crime(s), and are subject to seizure as such if they contain contraband or were used to carry out criminal activity.

# PROCEDURES TO BE FOLLOWED IN SEARCHING COMPUTERS

35.     The warrant sought by this Application does not authorize the "seizure" of computers and related media within the meaning of Rule 41(c) of the Federal Rules of Criminal Procedure. Rather the warrant sought by this Application authorizes the removal of computers and related media so that they may be searched in a secure environment.

36.     With respect to the search of any computers or electronic storage devices seized from the location identified in Attachment A hereto, the search procedure of electronic data contained in any such computer may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

        a.      examination of all of the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth herein;

        b.      searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

        c.      surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth

14

      d.     opening or reading portions of files in order to determine whether their contents fall within the items to be seized as set forth herein;

      e.     scanning storage areas to discover data falling within the list of items to be seized as set forth herein, to possibly recover any such recently deleted data, and to search for and recover deliberately hidden files falling within the list of items to be seized; and/or

      f.     performing key word searches through all storage media to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment B.

37.     Any computer systems and electronic storage devices removed from the premises during the search will be returned to the premises within a reasonable period of time not to exceed 30 days, or unless otherwise ordered by the Court.

## CONCLUSION

38.     Based on the above information, there is probable cause to believe that food stamp fraud, in violation of Title 7, United States Code, Section 2024, and wire fraud, in violation of Title 18 United States Code, Section 1343, has been committed, and that evidence, instrumentalities, and fruits relating to this criminal conduct, as further described in Attachment B, will be found in Subject Premises, as further described in Attachment A.

39.     In addition, based on the foregoing information, there is probable cause to believe that the contents of JP Morgan Chase Bank Account 764157582, in the name of Walid A. S. Ghnaim and/or held for the benefit of Jordan Fish Market, constitute and are

derived from proceeds traceable to violations of Title 7, United States Code, Section 2024, and Title 18, United States Code, Section 1343, and are subject to seizure pursuant to Title 18, United States Code, Section 981(a)(1)(C).

40.    I therefore respectfully request that this Court issue a search warrant for the Subject Premises, more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B, pursuant to the protocol described in the addendum to Attachment B.  I also respectfully request that this Court issue a warrant authorizing the seizure of the contents of JP Morgan Chase Bank Account 764157582, in the name of Walid A. S. Ghnaim and/or held for the benefit of Jordan Fish Market.


FURTHER AFFIANT SAYETH NOT.


Michael Parrish
Special Agent,
U.S. Department of Agriculture OIG


Subscribed and sworn
before me this 31st day of January, 2011

Honorable Sidney I. Schenkier
United States Magistrate Judge

**ATTACHMENT A**

## DESCRIPTION OF PREMISES TO BE SEARCHED

Jordan Fish Market is a small-sized grocery store located at 5105 S. Ashland Avenue, Chicago, IL 60636. It is a one-story yellow/white/red brick colored building with an entrance located on the southeast corner of W. 51st Street and S. Ashland Avenue. Jordan Fish Market is located adjacent to a restaurant named "J&J Fish." The two businesses share a parking lot which is directly in front of both stores. "J&J Fish" also has an address of 5105 S. Ashland Avenue, Chicago, IL 60609. However, Jordan Fish Market and J&J Fish are not connected from the inside. The front part of Jordan Fish Market is painted in a yellow in color. A sign that has the words "Fish Market" is directly above the entrance of Jordan Fish Market. The sign is painted red in color with yellow lettering spelling " Fish Market."

ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

Evidence, instrumentalities, and fruits concerning the violation of Title 7, United States Code, Section 2024, and Title 18, United States Code, Section 1343, as follows:

(1)    point-of-sale devices provided by the USDA in connection with the Food Stamp Program;

(2)    LINK EBT cards;

(3)    United States currency or cash;

(4)    any surveillance videos including but not limited to VHS cassettes, CDs, DVDs, and/or any computer-based surveillance system; and

(5)    All records, documents, and materials, in whatever form, including in digital form on computers and other data storage devices, such as hard drives, flash memory devices, compact discs, cellular telephones, and personal digital assistants, relating to:

    a.    EBT sales from any point of sale device;

    b.    telephone or address books;

    c.    ledgers, lists, or other records reflecting LINK card and/or Food Stamp Program transactions and exchanges;

    d.    bank statements and bank accounts related to the management or operation of Jordan Fish Market and/or Walid A.S. Ghnaim;

    e.    ownership of Jordan Fish Market;

    f.    ownership of the property located at 5105 S. Ashland Avenue, Chicago, Illinois;

g.    employment, payroll, and/or scheduling records concerning the staff
      at Jordan Fish Market;

h.    the receipt, transmittal, storage, or other disposition of cash,
      including currency transaction records, currency declaration forms,
      wire transfer instructions, copies of cashiers checks, and documents
      relating to safe deposit boxes;

i.    any assets held by Walid A. S. Ghnaim and/or Jordan Fish Market;
      and

j.    the purchase of food and non-food items for sale in Jordan Fish
      Market.

**ADDENDUM TO ATTACHMENT B**

This warrant does not authorize the "seizure" of computers and related media within the meaning of Rule 41(c) of the Federal Rules of Criminal Procedure. Rather this warrant authorizes the removal of computers and related media so that they may be searched in a secure environment. The search shall be conducted pursuant to the following protocol:

With respect to the search of any computers or electronic storage devices removed from the premises described in Attachment A hereto, the search procedure of electronic data contained in any such computer may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

    a.    examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth herein;

    b.    searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

    c.    surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein;

    d.    opening or reading portions of files in order to determine whether their contents fall within the items to be seized as set forth herein;

    e.    scanning storage areas to discover data falling within the list of items to be seized as set forth herein, to possibly recover any such recently deleted data, and to search for and recover deliberately hidden files falling within the list of items to be seized; and/or

    f.    performing key word searches through all electronic storage media to determine whether occurrences of language contained in such storage media exist that are likely to appear in the evidence described in Attachment B.

The government will return any computers or electronic storage devices removed from the premises described in Attachment A hereto within 30 days of the removal thereof, unless contraband is found on the removed computer and/or electronic storage device, or unless otherwise ordered by the Court.

AO 93 (Rev. 5/85) Search Warrant

# United States District Court

FOR THE  Northern District of Illinois, Eastern Division

In the Matter of the Search of
(Name, address or brief description of the person or property to be searched))

The premises of the grocery store called Jordan Fish
Market, located at 5105 S. Ashland Avenue, Chicago,
Illinois, as further described in Attachment A

**SEARCH WARRANT**

CASE NUMBER:  **11M037**

TO: Michael Parrish _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____ Michael Parrish _____ who has reason to
Affiant

believe that ☐ on the person of or ☑ on the premises known as (name, description and/or location)

See Attachment A

in the _____ Northern District of Illinois _____ there is now
concealed a certain person or property, namely (describe the person or property)

See Attachment B

I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or
property so described is now concealed on the person or premises above-described and establish grounds for the
issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _____ February 14, 2011 _____
Date
(not to exceed 10 days) the person or place named above for the person or property specified, serving this
warrant and making the search  (in the daytime--6:00 A.M. to 10:00 P.M.)
, and if the person or property be found there to seize same, leaving a
copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or
property seized and promptly return this warrant to _____ Sidney I. Schenkier _____
as required by law.
U.S. Judge or Magistrate

01-31-11 AT 5:30PM _____ at  Chicago, Illinois _____
Date and Time Issued                                      City and State

Sidney I. Schenkier, U.S. Magistrate Judge
Name and Title of Judicial Officer                      Signature of Judicial Officer

AO 93 (Rev. 2/90) Search Warrant

| RETURN | | |
|---|---|---|
| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |

| INVENTORY MADE IN THE PRESENCE OF |
|---|

| INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT |
|---|
| |

| CERTIFICATION |
|---|

I swear that this inventory is true and detailed account of the person or property taken by me on the warrant.

_____

Subcribed, sworn to, and returned before me this date.

_____        _____
U.S. Judge or Magistrate                                    Date

**ATTACHMENT A**

## DESCRIPTION OF PREMISES TO BE SEARCHED

Jordan Fish Market is a small-sized grocery store located at 5105 S. Ashland Avenue, Chicago, IL 60636. It is a one-story yellow/white/red brick colored building with an entrance located on the southeast corner of W. 51st Street and S. Ashland Avenue. Jordan Fish Market is located adjacent to a restaurant named "J&J Fish." The two businesses share a parking lot which is directly in front of both stores. "J&J Fish" also has an address of 5105 S. Ashland Avenue, Chicago, IL 60609. However, Jordan Fish Market and J&J Fish are not connected from the inside. The front part of Jordan Fish Market is painted in a yellow in color. A sign that has the words "Fish Market" is directly above the entrance of Jordan Fish Market. The sign is painted red in color with yellow lettering spelling " Fish Market."

**ATTACHMENT B**

## LIST OF ITEMS TO BE SEIZED

Evidence, instrumentalities, and fruits concerning the violation of Title 7, United States Code, Section 2024, and Title 18, United States Code, Section 1343, as follows:

(1)    point-of-sale devices provided by the USDA in connection with the Food Stamp Program;

(2)    LINK EBT cards;

(3)    United States currency or cash;

(4)    any surveillance videos including but not limited to VHS cassettes, CDs, DVDs, and/or any computer-based surveillance system; and

(5)    All records, documents, and materials, in whatever form, including in digital form on computers and other data storage devices, such as hard drives, flash memory devices, compact discs, cellular telephones, and personal digital assistants, relating to:

a.    EBT sales from any point of sale device;

b.    telephone or address books;

c.    ledgers, lists, or other records reflecting LINK card and/or Food Stamp Program transactions and exchanges;

d.    bank statements and bank accounts related to the management or operation of Jordan Fish Market and/or Walid A.S. Ghnaim;

e.    ownership of Jordan Fish Market;

f.    ownership of the property located at 5105 S. Ashland Avenue, Chicago, Illinois;

g.    employment, payroll, and/or scheduling records concerning the staff

at Jordan Fish Market;

h.    the receipt, transmittal, storage, or other disposition of cash,

including currency transaction records, currency declaration forms,

wire transfer instructions, copies of cashiers checks, and documents

relating to safe deposit boxes;

i.    any assets held by Walid A. S. Ghnaim and/or Jordan Fish Market;

and

j.    the purchase of food and non-food items for sale in Jordan Fish

Market.

# ADDENDUM TO ATTACHMENT B

This warrant does not authorize the "seizure" of computers and related media within the meaning of Rule 41(c) of the Federal Rules of Criminal Procedure. Rather this warrant authorizes the removal of computers and related media so that they may be searched in a secure environment. The search shall be conducted pursuant to the following protocol:

With respect to the search of any computers or electronic storage devices removed from the premises described in Attachment A hereto, the search procedure of electronic data contained in any such computer may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

  a.    examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth herein;

  b.    searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

  c.    surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein;

  d.    opening or reading portions of files in order to determine whether their contents fall within the items to be seized as set forth herein;

  e.    scanning storage areas to discover data falling within the list of items to be seized as set forth herein, to possibly recover any such recently deleted data, and to search for and recover deliberately hidden files falling within the list of items to be seized; and/or

  f.    performing key word searches through all electronic storage media to determine whether occurrences of language contained in such storage media exist that are likely to appear in the evidence described in Attachment B.

The government will return any computers or electronic storage devices removed from the premises described in Attachment A hereto within 30 days of the removal thereof, unless contraband is found on the removed computer and/or electronic storage device, or unless otherwise ordered by the Court.